JAMES R. HODGES *vs.* J. RUSSELL BULLOCK *et als.*

The voluntary assignees for the benefit of the creditors of A. filed a bill in equity against B., the copartner of A., for an account of the business and for the amount due A. In the examination before a master it appeared that A. had taken funds from the partnership for his private use, and had lent them on securities taken in his own name. The master reported a balance due from A. to B. The report was confirmed and the bill dismissed. Subsequently B. filed a bill against the assignees, who had sold the securities, to compel the payment to him as surviving partner, A. having died during the pendency of the former suit, of the price received for the securities.

*Held,* as it appeared from the record of the former suit that such suit involved a complete settlement of the copartnership concerns between B. and the assignees, and that pending the master's account B. had full knowledge of A.'s transactions, that B. was estopped, by the decree entered, from claiming the securities or their price.

The right of a *cestui* to follow a misapplied trust fund, and his right to hold the trustee as debtor therefor, are alternative, not concurrent rights.

BILL IN EQUITY to establish a trust and for an account.

*July* 30, 1887. DURFEE, C. J. The case made by the bill is this : The complainant and one William Barstow were formerly doing business as copartners under the firm name of William Barstow & Co. Barstow, having become financially embarrassed, conveyed all his property, except what was exempt from attachment by law, to the defendants in trust for his creditors. In October, 1877, the defendants brought a suit in equity against the

complainant and Barstow for an account of the copartnership business and a winding up of the same, in order to reach Barstow's interest, if any, therein. Pending this suit Barstow died, but the suit was revived against his administratrix. The master, to whom the case was referred to take the account, reported that there was due to the complainant as of September 24, 1877, from Barstow, or his estate, the sum of $43,354.82. The master also reported that this balance included certain amounts "taken out of the funds of the firm by William Barstow for his own private purposes, outside of the regular business of the firm," specifying among them large advances to Gideon Reynolds and to Perry & Barnard. The report was confirmed by decree entered February 18, 1882. The bill charges that the moneys so withdrawn and lent were not charged to Barstow in his individual account on the books of the copartnership, but, having been withdrawn without the knowledge of the complainant, were carefully concealed from him, Barstow having had exclusive charge of the books and having kept the same. The bill also alleges that Barstow took, as the complainant first learned in the course of the proceedings before the master, from Gideon Reynolds certain mortgages to himself, in his own individual name, as security for the moneys lent to said Reynolds as above stated, and claims that Barstow held these mortgages in equity as trustee for the firm of William Barstow & Co., but charges that they passed to the defendants, as Barstow's trustees or assignees, and have been sold by them for $2,300, paid to them by the purchasers. The bill also alleges that, as the complainant first learned in the course of the proceedings before the master, Barstow took to himself, in his own name, from Perry & Barnard or their successors in business, George Turnbull & Co., for the moneys lent to Perry & Barnard, certain negotiable notes and securities; that said notes and securities were held by him in equity as trustee for the firm, but that they passed to the defendants, as his trustees or assignees, and the defendants have collected the sum of $7,787.94 thereon. The prayer of the bill is that the defendants may be decreed to pay over said sums of $2,300 and $7,787.94 to the complainant, as surviving partner of the firm of William Barstow & Company.

The defendants set up in their answer, among other defences,

this, namely : That the complainant knew of the mortgages, notes, and securities, last above mentioned, during the pendency of their suit against him and Barstow, and before the report of the master or the final decree of the court therein ; yet that the moneys for which said mortgages, notes, and securities were given, in so far as they were withdrawn from the firm, were included in the sum reported in said report and adjudged in said decree to be due from Barstow to the complainant. The defendants, therefore, set up that the complainant is estopped from making any claim on account of said moneys, otherwise than under or according to said decree.

The decree referred to does not in terms give the complainant judgment against Barstow for the sum of $43,354.82 ; but it confirms the report of the master, finding that said sum is due from Barstow to the complainant, and dismisses the bill. An inspection of the record of the suit, in which the decree was entered, shows that the suit involved a complete settlement of the copartnership concerns as between the defendants and the complainant, the account taken being an account of all the assets and liabilities of the firm, showing first the balance due from Barstow to the firm, and then the balance due from Barstow to the complainant, Barstow's half of the surplus of assets over liabilities in the hands of the complainant being deducted from half the balance due from Barstow to the firm to make it. The partnership was thus completely wound up, and its affairs finally settled as between the defendants, as assignees or trustees of Barstow, and the complainant. While the account was taking, the complainant had full knowledge of the mortgages, notes, and securities ; and if he was ever going to lay claim to them as property held in trust for the firm, then was the time for him to do it, so that, if the claim was good, they might have been included in the account as a part of the assets of the firm. It was no less the right of the defendants to have the claim then made, if it was ever to be made, than it was his right to make it, for, if then made and allowed, the balance of account would have been materially different. The complainant did not then make it; on the contrary, he put forward a claim which was inconsistent with it, inasmuch as he caused or allowed Barstow to be charged as debtor to the firm, and as debtor

to himself individually, for the very moneys, secured in part by the mortgages, notes, and securities, which he now claims as trust property belonging to the firm. The question is whether he is not estopped by the decree from making his present claim. We think he is. The defendants would clearly be estopped by the decree from making any claim against the complainant, as surviving partner of the old firm of William Barstow & Co., which would be inconsistent with it, and we see no reason why the estoppel should not be mutual, and the complainant, as surviving partner, be likewise estopped from making any claim which is inconsistent with it. The right of the *cestui que trust* to follow misapplied trust funds, or to hold the trustee to answer for them as a debtor, is an option or an alternative, not a concurrent right. " The *cestui que trust*," says Judge Story, " has an option to insist upon taking the property, or he may disclaim any title thereto and proceed upon any other remedies to which he may be entitled, either *in rem* or *in personam*. The substituted fund is only liable to his option. But he cannot insist upon opposite and repugnant rights." 2 Story Eq. Jurisprudence, § 1262.

*Bill dismissed with costs.*

*James Tillinghast,* for complainant.

*Francis W. Miner & William G. Roelker,* for respondents.